

**U.S. Department of Justice**

Antitrust Division

---

*New York Office*

26 Federal Plaza  
Room 3630  
New York, New York 10278-0004

212/335-8000

FAX 212/335-8023

July 3, 2018

**By ECF & Hand Delivery**

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, New York 10007-1313

                        Re:    *United States v. Usher et. al.*, 17 Cr. 19 (RMB)

Dear Judge Berman:

      The Government submits this letter in response to Defendants' letter of June 25, 2018. The parties have met and conferred on these issues but are unable to resolve the disputes Defendants raise. The Government respectfully requests that the Court deny Defendants' requests.

      The parties have been able to shorten their estimate of the trial length, a topic that we address at the end of this letter.

1. <u>Witness Statements – Foreign Regulators</u>

      Following Your Honor's instruction on December 4, 2017 that the parties endeavor to resolve their dispute concerning certain foreign-located witness statements, the Government has attempted to obtain, and did obtain in one instance, the statements that Defendants seek. Counsel for the witness, as well as counsel for five different cooperating financial institutions, informed the Government that they did not possess copies of any of the statements. The Government therefore requested that counsel for the cooperating witness attempt to obtain these statements from the foreign regulators directly, which resulted in the production to Defendants of one statement on February 13, 2018. It is the Government's understanding that the cooperating witness made only one other statement to foreign regulators, not two, as the Defendants state in their June 25th letter. The foreign regulator that is in possession of that remaining statement has declined to make it available for discovery in this case. We informed the Defendants of this on March 7, 2018.

For the reasons set forth in our November, 22, 2017 letter to the Court, the Government is not required to search the files of a foreign agency that was not a member of the prosecution team, and does not have its own authority to obtain the remaining statement directly from the foreign sovereign that has it. *See* Dkt. 69 (November 22, 2017). While we have succeeded in voluntarily obtaining and providing to Defendants one of the statements they seek, the refusal by the other foreign regulator to provide the statement it possesses forecloses any additional means by which the Government could obtain this statement. Therefore, Defendants' request that the Government seek to obtain the one remaining foreign-located statement should be denied.

2. <u>Witness Statements – Federal Reserve Bank</u>

Defendants are similarly not entitled to statements made by the cooperating witness to the Federal Reserve Bank ("FRB"), pursuant to Fed. R. Crim. P. 16 and the Jenks Act (18 U.S.C. §3500), because the FRB was not a member of the prosecution team when any statements were made, and the Government does not have, and has never reviewed, the statements in question, if they even exist in written or recorded form.

The FRB has pursued an independent investigation into, and has taken regulatory action against, several individuals related to foreign exchange. We understand that aspects of that investigation are still ongoing. When multiple agencies of the federal government investigate the same conduct or subjects – as is the case here – the key analysis in delimiting the permissible scope of discovery "is the level of involvement between the United States Attorney's Office and the other agencies . . . the extent to which there was a 'joint investigation' with another agency." *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994). In this circuit, "courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team." *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006).[1]

Yet Defendants cite no cases addressing the scope of discovery in parallel or joint investigations, pointing only to local cases that are not analogous. For instance, *United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004), cited by Defendants, involved documents the government had in fact reviewed (which is not the case here). And the similarly inapposite case *United States v. Stein*, 488 F. Supp. 2d 350, 353-54 (S.D.N.Y. 2007) addressed whether an entity with a Deferred Prosecution Agreement could be required to produce documents under Rule 16. Moreover, the cases Defendants cite from other circuits either involve evidence that was otherwise discoverable but was lost (*United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir.

---

[1] While the Second Circuit has not precisely defined "the government" under Rule 16, there is no persuasive reason "that the government for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases. The concern of the Second Circuit in *Avellino* that a 'monolithic view' of the government would 'condemn the prosecution of criminal cases to a state of paralysis' applies with equal force in the Rule 16 context." *United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) *quoting United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

2

1971)), or was not located at the time of trial (*United States v. Beasley*, 576 F.2d. 626, 628-29 (5th Cir. 1978). Defendants have thus offered no legal basis in support of their request.

In this case, the Department of Justice ("DOJ") conducted limited fact-gathering with the FRB, which included only jointly attending 19 meetings and proffers with counsel for subjects and potential witnesses, between 2014 and February 2016. The DOJ and FRB did not share resources, exchange investigative evidence, or involve each other in strategic decisions. All discoverable materials from the meetings attended by both agencies have been produced to Defendants, and to ensure compliance with its discovery obligations, the DOJ has reviewed the notes of FRB staff pertaining to the meetings they attended with the DOJ.

The fact that the DOJ and FRB may have engaged in limited fact-finding at one time does not subject all of the FRB's files to discovery. Defendants seek information that is outside of the scope of permissible discovery in this case because it was gathered by the FRB as part of its own independent investigation. Indeed, as the court stated in *United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012), "[a]n investigation may be joint for some purposes; it may be independent for others." In *Gupta*, the court examined whether the government's *Brady* obligations required a search of U.S. Securities and Exchange Commission ("SEC") files where the government and the SEC jointly "investigated the facts of the case together" by jointly attending 44 witness interviews. *Id.* The court found that the government and SEC conducted a joint investigation, thus requiring the government to review SEC files only from jointly attended meetings, but also noted that "[t]his does not mean that all of the documents the SEC prepared and accumulated in its investigation of Gupta are part of the joint investigation." *Id.* Following *Gupta*, the DOJ has also reviewed FRB files pertaining to jointly attended meetings.

The DOJ's investigative coordination with the FRB ceased after February 2016. The DOJ is aware only that the cooperating witness met with FRB staff; the DOJ was not present at the meeting, was not involved logistically or otherwise in arranging the meeting, and has not received or reviewed any memorialization about what was said at the meeting. The DOJ is not required to review and obtain any statements made to the FRB as part of the FRB's own independent investigation simply because at one point the two agencies interacted, since "[i]nteracting with the prosecution team, without more, does not make someone a team member." *United States v. Meregildo*, 920 F. Supp. 2d 434, 431 (S.D.N.Y. 2013). Because the statements Defendants seek were not made to the FRB as part of a joint investigation with the DOJ, Defendant's request should be denied.

3. <u>Government Communications with Witness Counsel</u>

Defendants' final request, that the Government produce the communications it had with counsel for the cooperating witness, should also be denied. The Government is aware of its discovery obligations, has complied with them, and will continue to do so. To that end, the Government has already reviewed its communications with counsel for *all* witnesses and potential witnesses. Anything discoverable was produced in its original form or was disclosed by letter to Defendants on January 26, 2018. The January 26th letter was based on a review of all communications or interview notes the Government had at the time, and includes disclosures from communications with the cooperating witness's counsel.

3

Defendants demand that the Government go further, and produce communications in which the Government provided a witness's counsel with a list of documents or events to be discussed at an upcoming proffer or interview. Those communications would be entirely duplicative of information that Defendants already have. It is the Government's practice, at times, to identify specific documents for witness counsel that the Government seeks to question the witness about at a future time. When the witness is eventually interviewed about those documents (or counsel gives a proffer concerning those documents), the identity of those documents is necessarily included in the responses from the witness or counsel and are contained in the notes memorializing the interview or proffer, which Defendants in this case have long possessed. The Government is mindful that if witness counsel conveys to the Government information about what the witness would say about certain documents, this information is generally discoverable, and the substance of that communication must be disclosed if the witness's statement is not recorded elsewhere. This is why the Government provided such information to Defendants on January 26th.

Therefore, insofar as Defendants believe that the Government's identification of documents in its communications with witness counsel is integral to the "promises, rewards and inducements" offered to the witness (which the Government disputes), they already have such information. Defendants have offered no legal basis for requiring the Government to review its records a second time in order to produce information that the Defendants already have.

4. Trial Length

At Your Honor's instruction, the parties have also conferred about the anticipated length of trial. The Government currently estimates that it can rest its case-in-chief within 12 court days, which includes opening statements and full examination of the Government's case-in-chief witnesses (direct and cross examination), based on Defendants' representation that their cross-examinations will be at least as long as, and possibly longer than, the direct examinations. Defendants estimate their affirmative case can be completed in five to seven days (also inclusive of direct and cross examination). Allowing another day for closing arguments, in total, the trial length is currently estimated to be 18-20 days, or roughly three to four weeks.

The Government will continue to work with Defendants to see if the anticipated trial time can be shortened further through stipulations.

Respectfully submitted,

Jeffrey D. Martino
Chief, New York Office

Bryan C. Bughman /CS
Bryan C. Bughman
Carrie A. Syme
Trial Attorneys

4

Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Suite 3630
New York, New York 10278

cc: all defense counsel (via email and ECF)