August 24, 2020

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
New York, NY 10007-1312

Re: *United States v. Usher et al.*, 17 Cr. 19 (RMB)

Dear Judge Berman:

  We write briefly on behalf of Richard Usher and Rohan Ramchandani to note three important omissions in the government's letter of last Friday regarding our application to modify the protective order.

  ***First***, the government fails to address the critical fact raised in our letter that it already produced hundreds of pages of FBI reports ("302s") to the OCC as part of its extensive dialogue and coordination with the OCC. These 302s supplied to the OCC are Attorney Work Product, disclose extensive information about the government's cooperating witness and leniency applicant, and otherwise implicate the Antitrust Division Leniency Policy, privacy interests, and the Law Enforcement Privilege. In other words, the government already made the decision to produce its investigative materials to the OCC in contravention of every policy consideration it now invokes to prohibit use of criminal discovery by "civil litigants." *See* Gov't Letter at 4. Nowhere in its six-page letter does the government acknowledge that it already shared these investigative materials with the OCC—a fact we only learned from a discovery meet-and-confer with the OCC. The government's selective sharing of information with the OCC, which has the effect of limiting our ability to use exculpatory material in the OCC proceeding, directly impacts defendants' due process rights.

  As for the privacy interests of third-party businesses, the government asserts that "almost none of the investigative materials have been disclosed outside the confines of FX-related criminal discovery." *Id.* at 5. This is incorrect. These businesses have produced in civil class actions, to scores of different litigants, many of the very same materials at issue here. *See, e.g.*, Citibank to Hand Over DOJ Audio Files in Forex-Rigging Suit, Law360 (Aug. 3, 2020) ("over 300 other investors will be granted access to recordings that have been made available to U.S. authorities and courts across the Atlantic in parallel civil and criminal proceedings"); *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y.), Dkt. 1221 (declaration attaching dozens of Bloomberg chats produced by multiple banks in a class action involving more than 20 defendants and hundreds of class and opt-out plaintiffs).

  ***Second***, the government discounts the OCC ALJ's protective order, fearing that the OCC hearing will be public. *See* Gov't Letter at 5. Apart from the fact that many of the types of material the government now seeks to shield were already admitted in the criminal trial, the government ignores that the terms of the OCC protective order and the OCC's rules specifically allow for sealing portions of the hearing where appropriate. *See* 12 C.F.R. 19.33(b) (OCC "may file any document or part of a document under seal if disclosure of the document would be

contrary to the public interest.  The [ALJ] shall take all appropriate steps to preserve the confidentiality of such documents or parts thereof, including closing portions of the hearing to the public.").  Usher and Ramchandani would certainly be willing to close portions of their OCC proceedings if appropriate (for example, Usher and Ramchandani have already agreed to similar conditions with respect to certain information obtained from the Federal Reserve Board in the OCC proceedings).  If the government truly believes there are particular witness statements or other materials that merit special privacy measures, we invite them to provide us with a list, and we will work with them to address any legitimate concern.

*Third*, the government contends the protective order "unmistakably" precludes use of the materials in any other proceeding and required earlier destruction.  *See* Gov't Letter at 3.  The government's professed certainty about the protective order is belied by the record.  On July 15, defense counsel emailed the government and requested a phone call to discuss the protective order.  On a phone call the next day, defense counsel explained its good faith belief that paragraph 6 of the protective order appeared to permit use of the criminal discovery materials in U.S. agency proceedings like the OCC's, but that we wanted to ask the Court to resolve any ambiguity about the limitation to "applications or motions."  In response, government counsel (1) expressed no surprise that defendants had preserved archived copies of the criminal discovery; (2) said she thought the protective order already permitted defendants to use the materials freely in the OCC proceedings; (3) therefore questioned whether we needed to approach the Court; and (4) said she would consider the issue further.  Two weeks later, the government changed course and opposed our request, thus prompting this application.

The government now contends that paragraph 6—added at the defendants' request—is inapposite because it (1) was intended merely to enable the defendants to discuss specific materials shared by authorities such as the U.K.; and (2) requires an *ex parte* motion, which was not made here.  Neither assertion is correct.  First, paragraph 6 states: "Any Defense Counsel can use Disclosed Documents as part of any motion or application to a court or government agency in the United States or the United Kingdom."  It does not prescribe a specific time period during which such use is permitted, nor is it limited to discovery materials shared by foreign governments as the government now contends.  Second, by its plain terms, the *ex parte* motion requirement in paragraph 6 applies only where an application is made to an agency or court other than in the U.S. or U.K., not where the materials are sought for use in a court or government agency in the U.S., as is the case here.

The government's letter obscures defense counsel's good faith efforts to seek clarity about the scope of the protective order.  It fails to acknowledge the extensive efforts defense counsel undertook following the trial to segregate and archive the discovery materials, and the fact that not a single document has been used by the defendants in any other proceeding.  Nor does it acknowledge the potential spoliation risks that defendants could have faced in light of the OCC proceedings.  With the OCC finally recommencing proceedings earlier this year, amending its charges earlier this month, identifying the episodes on which they rely, and propounding discovery requests on defendants that encompass Disclosed Documents, our application to modify the protective order to ensure fair proceedings is ripe for consideration.

Respectfully submitted,

*/s/ Heather Nyong'o*

| | |
|---|---|
| Heather Nyong'o<br>Anjan Sahni<br>Thomas Mueller<br>*Counsel for Rohan Ramchandani*<br>WilmerHale LLP<br>7 World Trade Center<br>New York, NY 10007 | Michael Kendall<br>Mark Gidley<br>*Counsel for Richard Usher*<br>White & Case LLP<br>75 State Street<br>Boston, MA 02109 |

cc: Carrie Syme, Esq., (Department of Justice, Antitrust Division)